In re G. PAOLETTI, INC., Debtor.

DIESEL PERFORMANCE, INC., etc., et al., Plaintiffs,

v.

G. PAOLETTI CO., INC., etc., et al., Defendants.

And Related Counter– And Cross–Claims.

Bankruptcy No. 95–46785 TS.
Adversary No. 95–4883 AT.

United States Bankruptcy Court, N.D. California.

Jan. 9, 1997.

Charles E. Vose, Deputy City Attorney, for the City of Oakland.

Joseph K. Falzon, Goldberg, Stinnett, Meyers & Davis, San Francisco, CA, for Trustee, Richard Spear.

## MEMORANDUM OF DECISION

### (Oakland Summary Judgment Motion)

LESLIE TCHAIKOVSKY, Bankruptcy Judge.

Richard Spear (the "Trustee"), the chapter 7 trustee of the above-captioned bankruptcy estate, seeks authority to sell two partially completed fire trucks (the "Oakland Trucks") to Opperman and Sons ("Opperman") for $125,000 free and clear of all liens and interests. He also seeks a summary adjudication that the City of Oakland ("Oakland"), the party that contracted with the Debtor to purchase the Oakland Trucks prior to the commencement of bankruptcy, does not own the Oakland Trucks and has waived any right to possession of the Oakland Trucks. For the reasons set forth below, the Court grants both motions.[1]

## SUMMARY OF FACTS

To grant a motion for summary judgment, the Court must find that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). All evidence presented, as well as all inferences that can be drawn from the evidence, must be construed in favor of the

---

1. Section 363(f) of the Bankruptcy Code permits a trustee to sell property of the bankruptcy estate free and clear of liens if the lienholder consents or if the lien or interest is subject to a bona fide dispute. The parties that assert an interest in the Oakland Trucks have either consented to the sale or their interests are subject to a bona fide dispute. However, Oakland objects to the sale motion on the ground that Oakland owns the Oakland Trucks. This contention is addressed in connection with the Trustee's motion for partial summary judgment.

nonmoving party. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir.1988). In accordance with these standards, for purposes of these motions, the Court assumes the following facts to be true:

The above-captioned chapter 7 bankruptcy case was commenced on October 5, 1995. Prior to that date, G. Paoletti Co., Inc. (the "Debtor") was in the business of retrofitting truck chassis into special use vehicles: e.g., fire trucks. The Debtor resold these special use vehicles to end users, who were generally public entities like Oakland.

On or about June 21, 1994, Oakland agreed to purchase two fire trucks from the Debtor for $359,706.09. The agreement is evidenced by a purchase order, signed by Oakland, accepting a bid signed by the Debtor on a form supplied by Oakland (collectively the "Contract"). The purchase price includes $27,414.09 in sales tax. The Contract provides that Oakland will be entitled to a discount on the purchase price as follows:

> Discount for partial payment: City is entitled to a total discount of $6,134.00 ($3,067 each) if payment of chassis is made when G. Paoletti Company invoice the City for the Chassis and provides an insurance certificate covering loss of the chassis.

The Contract also provides that the Debtor must register the Oakland Trucks with the State of California for exempt license plates, listing Oakland as the registered legal owner. However, the Contract does not specify when the Debtor must register the Oakland Trucks.

The Debtor provided Oakland with invoices (the "Invoices") for the chassis for the Oakland Trucks on or about March 14, 1995 and May 8, 1995, respectively. Each Invoice is in the total amount of $83,830.69. This amount is calculated as follows: $80,508.75 less $3,067 discount for pre-payment plus $6,388.94 in sales tax. The Debtor also provided Oakland with an insurance certificate for at least one of the chassis—i.e., the chassis invoiced in March 1995 (the "March 1995 Insurance Certificate"). The March 1995 Insurance Certificate describes the Debtor as the insured and Oakland as the certificate holder. In addition, the March 1995 Insurance Certificate contains the following notation:

> Certificate holder is named as an additional insured as respect to work insured is doing on: 1995 International chassis VIN # 1HTHCAHT35H674598 *which is owned by the City of Oakland.* [Emphasis added.]

Oakland has been unable to locate an insurance certificate for the other chassis.

Oakland paid the amounts of the Invoices—a total of $167,661.38 (the "Partial Payment") sometime shortly after it received them. The original Contract price for the two units was $359,706.09. By paying the amounts of the Invoices, Oakland received the discount provided for in the Contract. As a result, the Contract price was reduced to $353,572.09 ($359,706.09 less $6,134). Thus, the balance due from Oakland to the Debtor under the Contract at present is $186,090.71 (the "Balance Due").

As noted above, the Debtor filed a bankruptcy petition on October 5, 1995. At that time, the Debtor had not completed the retrofit work on the Oakland Trucks. Bruce Jaussaud, a Fleet Specialist for Oakland, inspected the Oakland Trucks in September 1995 and determined that they were each approximately 75% complete. Jaussaud estimates their value at approximately $310,000 (the "Present Value"). He estimates the cost to complete their retrofit at approximately $140,000. The difference between the Present Value of the Oakland Trucks and the Partial Payment is $142,338.62.

Shortly after the bankruptcy case was filed, several of the suppliers of the truck chassis, including the suppliers of the Oakland Trucks, asserted claims that they had retained title to the truck chassis after delivering them to the Debtor. This adversary proceeding was commenced, and two motions for partial summary judgment were filed with respect to this issue. One of the motions was filed by Wells Fargo Bank, N.A. ("Wells Fargo"), the Debtor's principal secured creditor. The other was filed by the Trustee. The motions were consolidated for decision. The Court ultimately ruled against the suppliers, summarily determining that the suppliers had not retained title to the

truck chassis, including the Oakland Trucks (the "Prior Decision").

## DISCUSSION

### A. SUMMARY OF ISSUES

The Trustee contends that, at best, when the bankruptcy petition was filed, Oakland had a "special property interest" in the Oakland Trucks pursuant to section 2501 of the California Commercial Code (the "Commercial Code"). A buyer with a special property interest in undelivered goods has a right to possession of the goods under certain circumstances. The Trustee contends that Oakland has waived any such right by failing to tender the Balance Due.[2]

Oakland does not address this contention. Instead, it relies solely on its theory that it owns the Oakland Trucks. Oakland contends that title to the Oakland Trucks passed to Oakland when it made the Partial Payment. At a minimum, Oakland contends, there is a triable issue of fact with respect to this issue. The Trustee disagrees. First, he contends that Oakland's claims are barred by the Prior Decision under either res judicata or law of the case principles. Second, he contends that, even if the merits of Oakland's claims are considered, based on the evidence, he is entitled to a summary adjudication that the bankruptcy estate owns the Oakland Trucks.

### B. DOES OAKLAND OWN THE OAKLAND TRUCKS?

#### (1) Due Process Argument

■ As noted above, the Trustee contends that Oakland's claim of ownership is barred by the Prior Decision. Oakland opposes this contention on the ground that it did not have adequate notice that the prior motions for summary adjudication were intended to affect its interests. The Court views this argument as a due process argument. Having reviewed the relevant documents in the adversary proceeding file, the Court concludes that Oakland did receive adequate notice that the prior motions were intended to bind Oakland to satisfy due process concerns.

The notice of the Wells Fargo motion clearly directs the motion to all parties to the adversary proceeding. Oakland does not dispute that, at all relevant times, it was a party to the adversary proceeding. Additionally, the proofs of service reflect service on Oakland of each document filed in connection with the prior motions. Oakland does not contend that it did not receive these documents.

The notice of the Trustee's motion is not ideal. No separate document was filed entitled "Notice of Motion." Instead, the Trustee filed a document entitled "Opening Brief." The "Notice of Motion" is included as a section of the Opening Brief, immediately following the table of contents and authorities. Like the Wells Fargo motion, the heading of this section indicates that the motion is directed to all parties to the adversary proceeding. However, the text of the notice section directs the motion only to certain named parties, not including Oakland.

However, the Wells Fargo motion and the Trustee's prior motion were consolidated for decision. As discussed above, Oakland was clearly on notice that it would be bound by the Wells Fargo motion. Had Oakland been acting diligently to protect its interests, it should have objected to the consolidation if it did not wish to be bound by any decision directed to claims raised in the Trustee's motion as opposed to those raised in the Wells Fargo motion. Thus, the Court concludes that Oakland is bound by the Prior Decision. The question remains whether the Prior Decision bars Oakland's present contention that it owns the Oakland Trucks under either res judicata or law of the case principles.

#### (2) Res Judicata Argument

■ The doctrine of res judicata bars relitigation of an issue that was or could have

<hr/>

2. To date, Oakland has not offered to pay the Trustee any additional amount for the Oakland Trucks. Opperman has agreed to pay $125,000 for the Oakland Trucks. Oakland concedes that, "as is," the Oakland Trucks are worth approxi-

mately $142,000 more than it has paid for them. If Oakland had merely offered to pay the Trustee the Unpaid Value, the Trustee would presumably have agreed to sell the Oakland Trucks to Oakland rather than to Opperman.

been raised in a prior action.[3] In the prior motions for summary judgment, the chassis dealer that supplied the truck chassis for the Oakland Trucks contended that it owned the Oakland Trucks. Oakland clearly could have raised the contention that Oakland owned the Oakland Trucks in connection with those motions.

However, for res judicata to apply, four elements must be satisfied:

> ... (1) a final judgment on the merits; (2) the judgment was rendered by a court of competent jurisdiction; (3) a second action involving the same parties; and (4) the same cause of action involved in both cases.

*In re Heritage Hotel Partnership I,* 160 B.R. 374, 376–77 (9th Cir. BAP 1993), *aff'd,* 59 F.3d 175 (9th Cir.1995). The first, second, and fourth elements are satisfied in the instant case but not the third.

■ As required by the first element, there is a final judgment on the merits of the prior motions. Although normally a final judgment is not entered until all claims have been resolved, in this proceeding, the Trustee sought and obtained permission to enter a final partial judgment pursuant to the Prior Decision. *See* Fed.R.Civ.Proc. 54(b), made applicable to this proceeding by Fed. R.Bankr.Proc. 7054(a). There is no dispute concerning whether the Court had the jurisdiction to enter that judgment—the second element cited above.

■ In addition, the fourth element is satisfied: the same cause of action is involved. The contemporary approach is to use a transactional approach to define a claim or cause of action. Thus, as defined by the Restatement Second of Judgments, for res judicata purposes, a claim or cause of action "includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the actions arose." Restatement Second of Judg-

ments, 1981, § 24, quoted in 18 Charles Alan Wright—Arthur R. Miller—Edward H. Cooper, *supra,* § 4407, p. 55. Oakland's claims in connection with this motion arise out of its agreement to purchase the Oakland Trucks from the Debtor. The prior motions concerned the agreement by the supplier of the truck chassis for the Oakland Trucks to sell the truck chassis to the Debtor. The two agreements are either part of the same transaction or constitute a series of connected transactions.

■ However, the third element cited above is not satisfied. The parties to this motion are the same as the parties to the prior motions. However, this motion cannot be fairly characterized as a second action. The term "action" is commonly understood to refer to the entire legal proceeding: i.e., this adversary proceeding. Thus, Oakland is asserting a claim in the same action in which the Prior Decision was made, not a second action. As a result, the doctrine of res judicata does not apply.

### (3) Law of the Case Argument

■ The Trustee contends that, even if res judicata does not apply under these circumstances, Oakland's contention is barred by the Prior Decision under the related doctrine of "law of case."

> Under that doctrine a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher case in the identical action.... For the doctrine to apply, the issue in question must have been " 'decided either expressly or by necessary implication in [the] previous disposition.' "

*Thomas v. Bible,* 983 F.2d 152, 154 (9th Cir.1993), quoting *Milgard Tempering, Inc. v. Selas Corp. of America,* 902 F.2d 703, 715 (9th Cir.1990), in turn quoting *Liberty Mut. Ins. Co. v. E.E.O.C.,* 691 F.2d 438, 441 (9th Cir.1982).[4] Thus, the doctrine of law of the

---

**3.** By contrast, collateral estoppel only bars the relitigation of an issue that was actually determined. The modern trend is to refer to the broader effect of res judicata as claim preclusion and to refer to the narrower effect of collateral estoppel as issue preclusion. In this context, the

term "claim" is intended to correspond to the term "cause of action." 18 Wright—Miller—Cooper, Federal Practice and Procedure, Jurisdiction and Related Matters, § 4402 (1981).

**4.** The doctrine of law of the case is less rigidly applied than res judicata. A court has some

case will bar Oakland's contention that it owns the Oakland Trucks if that issue was decided, either expressly or by necessary implication, in the Prior Decision. The Court concludes that it was not.

Some of the language in the Prior Decision and the judgment entered pursuant to the Prior Decision, read out of context, supports the Trustee's position. It suggests that the Court made a broad determination that the truck chassis, including the Oakland Trucks, were the property of the above-captioned bankruptcy estate. However, the Prior Decision, read as a whole, clearly indicates the determination of narrower issues.

In the prior motions, the suppliers raised three arguments. First, they contended that they had effectively retained title to the truck chassis after they were delivered to the Debtor by retaining certain documents of title. Second, they contended that, by retaining these documents of title, at least, they perfected security interests in the truck chassis. Third, they contended that they had delivered the truck chassis to the Debtor as their bailee and had never intended to sell them to the Debtor. The Court ruled against the suppliers on all three issues. This was the context in which the Court stated that the bankruptcy estate owned the truck chassis. The Court was never asked to decide whether, after receiving title, the Debtor passed that title on to the end user— e.g., Oakland.

Moreover, the Prior Decision does not necessarily imply a determination that the Debtor did not pass title to the Oakland Trucks on to Oakland prior to filing its bankruptcy petition. The Prior Decision *would have* implied such a determination if the Court had found *in favor* of the suppliers. If the Court had concluded that the suppliers still held

discretion to reopen a previously resolved question. Courts have identified various factors that justify declining to apply the doctrine. *Thomas v. Bible,* 983 F.2d at 155. The Court finds none of these factors present here.

5. The parties' ability to agree that title to goods will pass to the buyer prior to delivery is limited by the rule that title may not pass before the goods are identified to the contract. Cal.Comm. Code § 2401(1). Section 2501(1) specifies when goods become identified to the contract. If the

title to the truck chassis at the time the bankruptcy petition was filed, the Court could not now decide that the Debtor had passed title to the Oakland Trucks on to Oakland prior to bankruptcy. However, the reverse is not true.

■■■■ Oakland could have raised its contention that it owns the Oakland Trucks in connection with the prior motions. However, the doctrine of law of the case does not bar the litigation of issues that could have been decided in proceedings previously conducted in the same case, only those that were.

### (4) Trustee's Right to Summary Adjudication on Ownership Issue

■■■■ The Trustee also contends that, based on the evidence presented in connection with this motion for partial summary judgment, he is entitled to a summary adjudication, rejecting Oakland's claim of ownership and declaring that the bankruptcy estate owns the Oakland Trucks. The Court agrees.

■■■■ The Contract is governed by Division 2 of the California Commercial Code (the "Commercial Code"). *See* Cal.Comm. Code §§ 2102, 2105. Section 2401(2) of the Commercial Code establishes the point in time at which title passes from a seller to a buyer. Section 2401(2) provides that "[u]nless otherwise explicitly agreed title passes to the buyer [when the seller completes physical delivery of the goods]...." It is undisputed that the Debtor never physically delivered the Oakland Trucks to Oakland. As a result, in order to establish that it owns the Oakland Trucks, Oakland must establish that it explicitly agreed with the Debtor that title would pass from the Debtor to Oakland prior to delivery.[5]

parties have an explicit agreement, that agreement will control. Since there is no evidence of such an agreement here, when the Oakland Trucks became identified to the Contract depends on whether the Oakland Trucks were existing or "future goods" when the Contract was made. Cal.Comm.Code § 2501(1)(a), (b). There is insufficient evidence in the record to permit the Court to make this determination. However, the determination is unnecessary since, under either provision, the Court concludes that the Oakland Trucks were identified to the Contract

Section 2201(1) of the Commercial Code provides that, to be enforceable, any agreement for the sale of goods for a price of $500 or more must be in writing, and the writing must be signed by the party against whom enforcement is sought. The price of the Oakland Trucks was in excess of $500. Thus, any explicit agreement between the Debtor and Oakland that title to the Oakland Trucks would pass prior to physical delivery must have been in writing.

Oakland cites a number of factors that it contends support its contention that it became the owner of the Oakland Trucks when it made the Partial Payment. First, Oakland contends that it would not have required the Debtor to provide a certificate of insurance for the Oakland Trucks naming Oakland as a beneficiary as a condition of its making the Partial Payment if the parties had not agreed that it would become the owner of the Oakland Trucks from that point on. Second, Oakland notes that, in addition to reimbursing the Debtor for its out of pocket costs for the truck chassis, it also paid the Debtor sales tax on the amount of the costs. Third, Oakland notes that the Debtor was required to register the Oakland Trucks in Oakland's name.

■ None of these factors is sufficient to establish as a matter of law either an explicit or implied agreement that title to the Oakland Trucks would pass to Oakland when Oakland made the Partial Payment. Section 2501(1) of the Commercial Code states that a buyer has an insurable interest in goods once they become identified to the contract. As noted above, the Oakland Trucks became identified to the Contract at least by the time that Oakland made the Partial Payment. Thus, Oakland's special property interest in the Oakland Trucks gave it the right to be named as the beneficiary on an insurance policy covering the Oakland Trucks. Its designation as beneficiary did not necessarily indicate that Oakland was the owner of the Oakland Trucks from that time forward.

■ Similarly, it is not particularly significant that Oakland was invoiced for sales tax in connection with the Partial Payment. As the retail purchaser, Oakland was clearly required to pay the Debtor sales tax with respect to the transaction at some point. The Partial Payment only included a portion of the sales tax. It is difficult to see how Oakland's payment of a portion of the sales tax would necessarily trigger the passage of title to Oakland to the Oakland Trucks as a whole.

■ The third factor—that the Debtor was required to register the Oakland Trucks in Oakland's name—has no relevance to the issue presented here whatsoever. As noted above, there was no specification as to when Debtor was required to register the Oakland Trucks. Unlike the requirement that the Debtor obtain insurance for the Oakland Trucks, the registration requirement was not a condition of Oakland's making the Partial Payment.

Oakland overlooks the strongest evidence in its favor: the March 1995 Insurance Certificate. As noted in the summary of facts, the March 1995 Insurance Certificate states that the chassis covered by the insurance policy is owned by Oakland. The policy was presumably procured by the Debtor. Thus, the March 1995 Insurance Certificate is evidence that the Debtor told the insurer issuing the policy that Oakland was the owner of the Oakland Trucks.

This evidence would support a finding that there was either an implied agreement or an explicit oral agreement that title to the Oakland Trucks would pass to Oakland when Oakland made the Partial Payment. If either an implied agreement or an explicit oral agreement were sufficient to cause title to pass under the Commercial Code, the Court would deny the Trustee's motion for summary adjudication. However, as discussed above, title to the Oakland Trucks could pass prior to their physical delivery only if there were an explicit agreement in writing signed by the Debtor. No such writing has been supplied to the Court. For that reason, the

---

at least by the time the Partial Payment was made. *But see In re Tacoma Boatbuilding Co.,* 158 B.R. 19 (S.D.N.Y.1993) (incomplete object

does not qualify as good and thus may not be identified to contract).

Court finds in favor of the Trustee on the issue of ownership.

## C. OAKLAND'S RIGHTS AS HOLDER OF SPECIAL PROPERTY INTEREST

■ The Court must now address the issue originally raised by the Trustee's motion: i.e., whether Oakland has waived any right to possession of the Oakland Trucks under Division 2 of the Commercial Code as the holder of a special property interest by failing to tender the Balance Due. Two sections of the Commercial Code arguably apply: sections 2502 and 2716.[6] Both sections give a buyer with a special property interest the right to possession of goods under certain circumstances.

Section 2502 requires the buyer to have made partial payment for the goods; the seller must have become insolvent within ten days after receiving the first installment of the purchase price; and the buyer must tender any unpaid balance of the purchase price. Section 2716 requires the buyer to establish that it is unable to "cover": i.e., obtain substitute goods; it makes no reference to the financial condition of the seller; the buyer need not have paid any portion of the purchase price; and there is no express requirement that the buyer tender any unpaid balance of the purchase price.

The Trustee contends that sections 2502 and 2716 both require the buyer to pay the balance of the purchase price to recover the goods. Alternatively, the Trustee contends that only section 2502 applies when the seller

is insolvent. Oakland does not address these contentions; it relies exclusively on its claim that it owns the Oakland Trucks.

The Trustee has cited and the Court has found no case precisely on point as to either issue. Some courts appear to assume, without discussion, that sections 2502 and 2716 both apply in a bankruptcy context. *See Abbott v. Blackwelder Furniture Company of Statesville, Inc.,* 33 B.R. 399, 403 (W.D.N.C. 1983); *In re Surplus Furniture Liquidators, Inc. of High Point,* 199 B.R. 136, 140–42 (M.D.N.C.1995). Other courts only address a buyer's rights under section 2716, with no mention of section 2502, even though the seller is insolvent. *In re Bullet Jet Charter, Inc.,* 177 B.R. 593 (Bankr.N.D.Ill.1995); *Proyectos Electronicos, S.A. v. Alper,* 37 B.R. 931, 933–34 (E.D.Pa.1983). With the exception of *Carey,* none of the courts appears to have been asked to permit the buyer to deduct its damages from the purchase price.

For the reasons stated below, the Court concludes that section 2716 does not necessarily require the buyer to tender any unpaid balance of the purchase price. The Court further concludes that only section 2502 applies when a seller is insolvent. Finally, the Court concludes that section 2502 is not enforceable in a bankruptcy case.

### (1) *Do Sections 2502 and 2716 Both Require the Buyer To Tender Any Unpaid Balance of the Purchase Price?*

■ The Trustee acknowledges that section 2716 does not expressly require the buyer to tender any unpaid balance of the

---

6. Section 2502 of the Commercial Code provides as follows:

**§ 2502 Buyer's Right to Goods on Seller's Insolvency**

(1) ... even though the goods have not been shipped a buyer who has paid a part ... of the price of goods in which he has a special property under ... [section 2501] may on making and keeping good a tender of any unpaid portion of their price recover them from the seller if the seller becomes insolvent within 10 days after receipt of the first installment on their price.

(2) If the identification creating his special property interest has been made by the buyer he acquires the right to recover the goods only if they conform to the contract for sale.

Section 2716 provides as follows:

**§ 2716 A Buyer's Right to Specific Performance or Replevin**

(1) Specific performance may be decreed where the goods are unique or in other proper circumstances.

(2) The decree for specific performance may include such terms and conditions as to payment of the price, damages, or other relief as the court may deem just.

(3) The buyer has a right of replevin for goods identified to the contract if after reasonable effort he is unable to effect cover for such goods or the circumstances reasonably indicate that such effort will be unavailing or if the goods have been shipped under reservation and satisfaction of the security interest in them has been made or tendered.

purchase price as a condition of obtaining possession of the goods. However, he contends that this requirement should be implied. He acknowledges that there is one reported case in which a buyer was granted possession of the goods and permitted to deduct its damages from · the purchase price—*Carey Aviation v. Giles World Marketing, Inc.*, 46 B.R. 458, 464 (D.Mass.1985). However, he notes that *Carey* contains no analysis of the issue and involves a dispute between a buyer and a secured creditor pursuant to section 9307, not a dispute between a buyer and a seller pursuant to either section 2502 or 2716.[7]

The Trustee's contention that section 2716 requires a buyer to tender any unpaid balance of the purchase price without any deduction for nonconformity fails to account for section 2717. Section 2717 provides as follows:

### § 2717 Deduction of Damages From the Price

The buyer on notifying the seller of his intention to do so may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract.

While section 2717 does not expressly state that it is intended to apply to a buyer seeking possession of goods under section 2716, its proximity to section 2716 suggests that it does apply. There is nothing awkward about such an application. Since section 2716 does not expressly require the buyer to tender any unpaid balance of the purchase price, there is no inconsistency between the two. Thus, the Court rejects the Trustee's contention that a buyer must necessarily tender any unpaid balance of the purchase price to obtain possession of goods under section 2716.

However, the Court agrees with the Trustee that a buyer seeking possession under section 2502 must tender any unpaid balance of the purchase price without reduction for nonconformity. The Court does not believe that section 2717 was intended to apply under those circumstances. Section 2717 does not expressly state that it applies to a buyer seeking possession under section 2502; it does not proximately follow section 2502; and its provisions are inconsistent with those of section 2502. Additionally, when a buyer's remedies under Division 2 in general are considered, it becomes clear that such an application would be anomalous.

Under Division 2 of the Commercial Code, a buyer is rarely permitted to retain nonconforming goods and also recover damages from the seller for nonconformity. A buyer is generally required to choose between acceptance or rejection of the goods. Cal. Comm.Code § 2601. If goods are rejected, they must be returned to the seller. Cal. Comm.Code §§ 2601, 2602. Under certain circumstances, a buyer may revoke acceptance; however, again, if acceptance is revoked, the buyer must return the goods to the seller. Cal.Comm.Code § 2608(3).

Section 2607(2) of the Commercial Code states that acceptance of goods does not "of itself" impair any other remedy for nonconformity provided by Division 2. However, the remedies section of Division 2—chapter 7—permits a buyer to retain goods and also recover damages for their nonconformity only in one instance. Section 2607(3) provides that, when a buyer has accepted goods without knowledge that they are nonconforming, the buyer must give notice of the nonconformity to the seller within a reasonable time after the nonconformity is or

---

**7.** Section 2402(3) states that the rights of a buyer with a special property interest in goods may not impair the rights of a secured creditor pursuant to Division 9 of the Commercial Code. However, section 9307 states that a buyer in the ordinary course of business takes goods free of any claim by the seller's secured creditors. The majority of courts have held that a buyer with a special property interest may qualify as a buyer in the ordinary course and that it is not necessary for title to have passed for the buyer to prevail over the secured creditor. *Matter of Dar-*

*ling's Homes, Inc.*, 46 B.R. 370, 377–79 (Bankr. Del.1985); *Carey Aviation v. Giles World Marketing, Inc.*, 46 B.R. 458, 460–61 (D.Mass.1985); *contra Kinetics Technology International Corp. v. Fourth National Bank of Tulsa*, 705 F.2d 396, 400–02 (10th Cir.1983) (buyer only prevails if title has passed); *see also In re Tacoma Boatbuilding Co.*, 158 B.R. 19, 23 (S.D.N.Y.1993) (buyer need not even have acquired special property interest in goods to have buyer in ordinary course status; execution of contract is sufficient).

should have been discovered. Otherwise, the buyer will be barred from any remedy.

Section 2714(1) provides that, if this notice has been given, the buyer may recover damages due to the nonconformity. The buyer is not required to revoke its acceptance of the goods and thus is not required to return them to the seller. The rarity of this dual remedy in the general scheme of Division 2—i.e., retention of goods and recovery of damages for nonconformity—supports the narrow application of section 2717: i.e., only to a buyer seeking possession under section 2716 and not to a buyer seeking possession under section 2502.

### (2) *Does Section 2502 Alone Apply When the Seller is Insolvent?*

■ The Court agrees with the Trustee's alternative contention—i.e., that, when a seller becomes insolvent before goods are delivered, a buyer's right to possession of the goods must stand or fall on the basis of section 2502. First, the heading of section 2502 suggests that it is the only statute intended to apply when the seller is insolvent. Second, the Official Comment to the Commercial Code contains a statement that supports this conclusion.

As noted above, one of the requirements of section 2502 is that the seller become insolvent within ten days after receiving the first installment of the purchase price. The Official Comment to the Commercial Code contains the following statement concerning the effect of section 2502:

> The question of whether the buyer also acquires a security interest in identified goods and has rights to the goods when insolvency takes place *after* the ten-day period provided in this section depends upon compliance with the provisions of the Article (Chapter) on Secured Transactions (Article (Chapter) 9). [Emphasis added.]

*See In re Tennecomp Systems, Inc.*, 12 B.R. 729, 737 (Bankr.E.D.Tenn.1981) (citing Offi-

cial Comment). Thus, a buyer whose seller becomes insolvent more than ten days after receipt of the first installment may not seek possession of the goods under section 2716.

The deficiency at issue here is Oakland's failure to tender the balance of the purchase price, not the seller's having become insolvent more than ten days after receiving the first installment of the purchase price.[8] However, the underlying principle is the same: if the buyer is unable to satisfy the conditions of section 2502, the buyer may not resort to section 2716 for assistance.

### (3) *Is Section 2502 Enforceable in a Bankruptcy Case?*

■ Oakland's claim for possession of the Oakland Trucks pursuant to section 2502 must fail for another reason. The Court concludes that section 2502 gives a buyer nothing more than an unsecured claim in a bankruptcy case. Generally, federal bankruptcy law looks to state law to determine a party's property rights. However, a buyer's "special property interest" in goods identified to the contract is a property interest in name only. The only right this "property interest" gives a buyer is the right to possession of the goods under certain circumstances. If the buyer does not exercise this right and the goods are sold, the buyer has no right to any portion of the sale proceeds.

Thus, a buyer's special property interest is more accurately described as an equitable remedy than a property interest. The Bankruptcy Code defines "claim" as including:

> ... [a] right to an equitable remedy for breach or performance if such breach gives rise to a right to payment....

11 U.S.C. § 101(5). A seller's failure to deliver goods to a buyer is a breach of performance that gives the buyer a right to money damages from the seller. Cal.Comm.Code § 2711(1). As a result, in a bankruptcy case, a buyer's rights under section 2502 of the Commercial Code give the buyer nothing

---

**8.** The Trustee does not concede that the Debtor became insolvent within ten days after receiving the first installment of the Partial Payment in March 1994. Given the fact that the Debtor did not file its bankruptcy petition until October 1995, this might well provide another reason for denying Oakland the right to possession of the Oakland Trucks pursuant to section 2502. However, the Trustee has presented no evidence on this issue and does not ask the Court to grant its motion on the basis of this deficiency at this time.

more than a claim against the bankruptcy estate. As discussed above, this claim is unsecured unless the buyer has perfected a security interest in the goods under Division 9 of the Commercial Code as section 1201(37)(a) permits it to do.

On the other hand, if a buyer's right to possession of goods identified to the contract pursuant to section 2502 of the Commercial Code is characterized as a lien, it is clearly avoidable as a statutory lien pursuant to section 545 of the Bankruptcy Code. Section 545(1)(D) provides that the trustee may avoid a statutory lien that becomes effective only when the debtor becomes insolvent. Although a buyer acquires a special property interest when the goods are identified to the contract, not when the debtor becomes insolvent, the buyer's special property interest does not, by itself, entitle the buyer to possession of the goods. The buyer's right to possession only arises under certain conditions, among them, the seller's becoming insolvent within ten days after receiving the first installment on the purchase price.

In reaching this determination, the Court has duly considered *Matter of Telemart*, 524 F.2d 761 (9th Cir.1975).[9] In *Telemart*, a case decided under the Bankruptcy Act, the Ninth Circuit rejected the contention that section 2702 of the Commercial Code created a statutory lien that was avoidable in a bankruptcy case. Section 2702 provides that a seller who sells goods on credit to a buyer that is insolvent may reclaim the goods as long as the seller makes demand for the goods within ten days of their receipt by the buyer.

The rationale for the *Telemart* decision highlights the fundamental differences between sections 2502 and 2702. The *Telemart* court held that, when a seller delivers goods to an insolvent buyer, the sale is fraudulent and subject to rescission. Although title passes to the buyer on delivery, the title is voidable from its inception. Because full title never passed to the debtor, permitting the seller to rescind the transaction does not give the seller preferential treatment vis-a-vis other creditors of the bankruptcy estate. *Telemart*, 524 F.2d at 764.

By contrast, section 2502 gives a buyer the right to possession of goods even though the seller was solvent when it received the first installment of the purchase price. The seller need only become insolvent within ten days *after* receipt. Such a transaction cannot be fairly characterized as fraudulent. Moreover, for the remedy provided by section 2502 to be comparable to that provided by section 2702, the buyer would be entitled to recover its partial payment, not to obtain possession of the goods.

There is further reason to distinguish *Telemart*. When the Bankruptcy Code replaced the Bankruptcy Act in 1979, a new provision was enacted addressing the enforceability of a seller's rights under section 2702 of the Commercial Code—i.e., 11 U.S.C. § 546(c). Section 546(c) preserves the state law rights of a seller of goods to an insolvent debtor with certain limitations. The drafters of the Bankruptcy Code must have been aware of section 2502 of the Commercial Code. If they had wanted to preserve a buyer's rights under section 2502, surely, they would have enacted a comparable provision to that effect.

Section 2502 is also inconsistent with section 365 of the Bankruptcy Code and is therefore preempted by that section pursuant to the Supremacy Clause—Article VI of the United States Constitution. *See Abbott v. Blackwelder Furniture Co.*, 33 B.R. 399, 404–05 (W.D.N.C.1983). Section 365 of the

---

9. The Court has also considered *Matter of Daylin, Inc.*, 596 F.2d 853, 854–55 (9th Cir.1979) which was decided shortly after *Telemart*. In *Daylin*, the Ninth Circuit held that a trustee could not use the trustee's right as a hypothetical lien creditor under bankruptcy law to avoid a seller's rights under section 2702 of the Commercial Code. Section 2702 makes a seller's reclamation rights subject to the rights of a buyer in the ordinary course or other good faith purchaser or "lien creditor." However, the Ninth Circuit concluded that, under applicable state law, a lien creditor would not prevail against a seller with a right to reclaim goods pursuant to section 2702. *Matter of Daylin*, 596 F.2d at 856; *see also In re Bullet Jet Charter, Inc.*, 177 B.R. 593, 605–06 (Bankr.N.D.Ill.1995) (holding that trustee's rights as a hypothetical lien creditor did not prevail over buyer's equitable title to goods where buyer had fully paid for goods and seller had deposited bill of sale into escrow prior to bankruptcy). The Court does not address this issue here: i.e., whether a buyer's rights under section 2502 of the Commercial Code are avoidable by a bankruptcy trustee pursuant to section 544(a)(1) of the Bankruptcy Code.

264

Bankruptcy Code gives the trustee the right to decide whether it is in the best interests of the bankruptcy estate to assume or reject an executory contract. If the contract is assumed, the trustee must perform the debtor's obligations under the contract and is entitled to all consideration due to the debtor. If the trustee rejects the contract, the trustee need not perform the contract, and the other contracting party may assert a general, unsecured claim for damages against the bankruptcy estate.

■ The term "executory contract" is not defined by the Bankruptcy Code. However, case law has construed it to mean a contract on which material obligations remain to be performed by both parties. *In re Bullet Jet Charter, Inc.*, 177 B.R. 593 (Bankr.N.D.Ill. 1995). The Contract fits within the definition of an executory contract cited above. If section 2502 were enforceable in a bankruptcy case, the buyer, rather than the trustee, would have the right to make the decision whether the sale contract should be assumed or rejected. When state law conflicts with federal law, the Supremacy Clause requires that federal law prevail.

### CONCLUSION

The Court finds in favor of the Trustee on both motions. The sale of the Oakland Trucks to Opperman is approved. It is summarily adjudicated that Oakland does not own the Oakland Trucks and has waived any right to possession of the Oakland Trucks under Division 2 of the Commercial Code by failing to tender the Balance Due to the Trustee. Moreover, section 2502 of the Commercial Code, the sole provision that applies when a seller is insolvent, is unenforceable when the seller files a bankruptcy petition. The buyer has only an unsecured claim against the bankruptcy estate. Counsel for the Trustee is directed to submit two proposed forms of order in accordance with this decision, one with the main case caption authorizing the sale, the other with the adversary proceeding caption granting summary adjudication.